UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GULF COAST PLASTIC SURGERY,                CIVIL ACTION
INC. AND DR. EDWARD M.
CAMPBELL


VERSUS                                     NO: 07-9363


THE STANDARD INSURANCE                     SECTION: R(4)
COMPANY, HAYWOOD HILLYER, AND
AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE
COMPANY


**ORDER AND REASONS**


Before the Court is plaintiffs' motion to remand for lack of subject matter jurisdiction. At issue is whether the Employment Retirement Income Security ACT (ERISA), 29 U.S.C. § 1001, *et seq.*, completely preempts plaintiffs' state law claims such that a federal question under ERISA exists. For the following reasons, the Court GRANTS plaintiffs' motion.

I.    **BACKGROUND**

The plaintiffs in this action are Gulf Coast Plastic Surgery, Inc., a Louisiana medical practice, and Dr. Edward M. Campbell, Gulf Coast's sole shareholder and a Louisiana citizen. The defendants are Haywood Hillyer, a Louisiana citizen and plaintiffs' insurance agent, and American International Specialty Lines Insurance Company (AISLIC), Hillyer's professionally liability insurer (collectively "Hillyer"). Plaintiffs initially also brought claims against a third defendant, Standard Insurance Company, but voluntarily dismissed their claims against Standard shortly after filing suit in state court and before Hillyer removed this case to federal court.

On November 1, 2000, Hillyer, acting as plaintiffs' insurance agent, procured a group, long-term disability insurance policy with limits of $6,000 per month from Standard for plaintiffs. A little less than a year later in October 2001, plaintiffs asked Hillyer to procure an increase in the policy limits from $6,000 to $10,000 per month. Hillyer conferred with plaintiffs on how to effect the increase and later advised plaintiffs that the policy limits had been increased. On October 21, 2005, Dr. Campbell suffered a disabling injury and later applied for full disability benefits under the policy. Standard determined that Dr. Campbell was disabled and entitled to full

2

benefits under the plan but that he was entitled to a maximum of only $6,000 per month, not $10,000. The increase that Hillyer assured plaintiffs had taken effect had in fact not taken effect.

On October 25, 2007, plaintiffs sued Standard, Hillyer, and AISLIC in state court. Plaintiffs brought breach of contract claims against Standard, and against Hillyer they brought tort claims for failure to procure the requested increase in policy limits and negligent misrepresentation. Plaintiffs seek the difference between the coverage received under the disability plan and the coverage limits that Hillyer allegedly assured plaintiffs that he had procured. A month after bringing suit and before Hillyer and AISLIC removed this case to federal court, plaintiffs voluntarily dismissed their claims against Standard. Hillyer then removed this case on federal question grounds. Hillyer contends that the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, preempts plaintiffs' state law claims. Plaintiffs now move to remand.


## II. LEGAL STANDARDS

### A.    Removal

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The removing party bears the

3

burden of showing that federal jurisdiction exists. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). In assessing whether removal is appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, 1995 WL 419901, at *2 (E.D. La. 1995). "[A]ny doubt as to the propriety of removal should be resolved in favor of remand." *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007). Though the Court must remand the case to state court if at any time before final judgment it appears that it lacks subject matter jurisdiction, the Court's jurisdiction is fixed as of the time of removal. 28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

**B.   Federal Question Jurisdiction — ERISA Preemption**

Federal district courts have jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether a claim arises under federal law must be determined by referring to the "well-pleaded complaint." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983)). *See also Howery v. Allstate Ins.*

4

*Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The well-pleaded complaint rule means that the federal question must appear on the face of the complaint. *See Torres v. Southern Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997). A defendant who seeks removal bears the burden of demonstrating that a federal question exists. *See Hot-Head*, 477 F.3d at 323. Because a defendant may remove a case to federal court only if the plaintiff could have brought the action in federal court from the outset, "the question of removal jurisdiction must also be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow*, 478 U.S. at 808 (citation omitted). "[A] defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." *Franchise Tax Bd.*, 463 U.S. at 10 (emphasis in original). The mere presence of "[a] defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow*, 478 U.S. at 808 (citing *Mottley*, 211 U.S. 149); *Franchise Tax Bd.*, 463 U.S. at 12, 13-14. Therefore, federal question jurisdiction does not exist unless the "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow*, 478 U.S. at 809.

Here, plaintiffs assert only state law tort claims against non-diverse defendants. On the face of their complaint, a federal question does not exist. But there is an exception to the well-

5

pleaded complaint rule: "'[W]hen a federal statute wholly displaces the state-law cause of action through complete preemption,'" the state claim can be removed." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). Removal of such a claim is appropriate because "'[w]hen the federal statute completely [preempts] the state law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" *Id.* (quoting *Beneficial Nat'l Bank*, 539 U.S. at 8.). *See also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-65 (1987) ("Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.") ERISA is one of these statutes. *Davila*, 542 U.S. at 207.

ERISA may preempt state law claims in one of two ways. *See Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999) (citing *McClelland v. Gronwaldt*, 155 F.3d 507 (5th Cir. 1998), *overruled in part on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 n.11 (5th Cir. 2003)); *Cotner v. Hartford Life and Annuity Ins. Co.*, Civ. A. No. 3:07-CV-0487-G, 2008 WL 59174, at *3 (N.D. Tex. Jan. 4, 2008). First, it may "occupy a particular field, resulting in complete preemption

6

under [ERISA] § 502(a), 29 U.S.C. § 1132(a)." *Giles*, 172 F.3d at 336 (citing *Met. Life Ins.*, 481 U.S. 58; *McClelland*, 155 F.3d at 516-17). *See also Arana*, 338 F.3d at 437. Even if a complaint does not refer to federal law, a federal statute that completely preempts a field effectively "'recharacterizes' preempted state law claims as 'arising under' federal law for the purposes of making removal available to the defendant." *McClelland*, 155 F.3d at 516. *See also Giles*, 172 F.3d at 337 n.7. "[C]omplete preemption exists when a remedy falls within the scope of or is in direct conflict with ERISA § 502(a), and therefore is within the jurisdiction of federal court." *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004). ERISA § 502(a) provides several causes of action that may be brought by an ERISA plan beneficiary, participant, the Secretary of Labor, or plan administrator or fiduciary. Relevant to this case is ERISA § 502(a)(1)(B), which provides that "[a] civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Any state cause of action that seeks the same relief as a cause of action authorized by ERISA § 502(a), "regardless of how artfully pleaded as a state action," is completely preempted.

7

*Giles*, 172 F.3d at 337. Thus, if a plan beneficiary or participant seeks to recover benefits from an ERISA plan under a state law cause of action, those claims are completely preempted and subject to removal. But only when ERISA § 502(a) *completely preempts* a state law claim does it raise a federal question providing a basis for removal jurisdiction. *Giles*, 172 F.3d at 336. *See also Anderson v. Electronic Data Systems Corp.*, 11 F.3d 1311, 1315 (5th Cir. 1994) Other circuits are in accord. *See, e.g., Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4-5 (1st Cir. 1999); *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 272 (2d Cir. 1994); *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995); *Warner v. Ford Motor Co.*, 46 F.3d 531, 535 (6th Cir. 1995); *Jass v. Prudential Health Care Plan*, 88 F.3d 1482, 1487 (7th Cir. 1996); *Cotton v. Massachusetts Mutual Life Ins. Co.*, 402 F.3d 1267, 1281 (11th Cir. 2005).

The second form of ERISA preemption is known as "ordinary" or "conflict" preemption. It exists when ERISA provides an affirmative defense to state law claims and involves ERISA § 514(a), 29 U.S.C. § 1144(a). *Giles*, 172 F.3d at 337. Section 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employer benefit plan." The Fifth Circuit in *Giles* made clear, however, that the existence of conflict preemption under § 514 of ERISA

does not, by itself, create an exception to the well-pleaded complaint rule. "'State law claims [that] fall outside the scope of ERISA's civil enforcement provision § 502, even if preempted by § 514(a), are still governed by the well-pleaded complaint rule and, therefore, are not removable under the complete-preemption principles established in *Metropolitan Life*.'" *Id.* (quoting *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995)). *See also Franchise Tax Board*, 463 U.S. at 23-27 (explaining that even though ERISA § 514(a) may preclude enforcement of a state law claim, removal of a claim that falls outside the scope of ERISA § 502(a) is inappropriate). The mere presence of conflict preemption does not raise a federal question. Instead of "transmogrifying a state cause of action into a federal one — as occurs with complete preemption — conflict preemption serves as a *defense* to a state action." *Giles*, 172 F.3d at 337. (citing *Soley v. First Nat'l Bank of Commerce*, 923 F.2d 406, 407-08 (5th Cir. 1991); *Rice v. Pachal*, 65 F.3d 637, 639-40 (7th Cir. 1995)).

In order for a district court to exercise removal jurisdiction, complete preemption must exist. "When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute

regarding preemption." *Id.* In the absence of complete preemption, the district court "lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved." *Id.* (citing *Dukes*, 57 F.3d at 355). When a case involves "solely arguably conflict-preempted causes of action," remand is appropriate. *Id.* at 338.

## III. DISCUSSION

The Court observes at the outset that Hillyer, despite having submitted three rounds of briefs, has not identified which cause of action under ERISA § 502(a) completely preempts plaintiffs' state law claims. Instead of explaining how plaintiffs' claims fall within the scope of ERISA § 502(a), Hillyer's arguments hew closely to the question of whether plaintiffs' claims "relate to" the disability insurance plan within the meaning of ERISA § 514(a). The confusion in Hillyer's argument may stem from the fact that some cases include analyses about the propriety of removal within the context of ERISA § 514(a)'s "relates to" standard without discussing § 502(a). *See, e.g., Hobson v. Robinson*, 75 Fed. Appx. 949, 952 (5th Cir. 2003) (explaining that the court must "determine whether a state law claim for fraud and misrepresentation 'relates to' a plan and is thus encompassed in ERISA's preemptive sweep"); *Perkins v. Time*

10

*Ins. Co.*, 898 F.2d 470, 474 (5th Cir. 1990) (determining that no basis for federal jurisdiction over state law claims existed after analyzing whether such claims related to an ERISA plan). Further, the Fifth Circuit recently commented that there did not appear to be any case "in which § 502(a) preemption was found to be proper where the state law claims did not 'relate to' the ERISA plan under [a] § 514(a) analysis. . . . The set of claims described § 502(a) will rarely, if ever, differ from the set of claims that 'relate to' an ERISA plan under § 514(a)." *Woods v. Texas Aggregates, L.L.C.*, 459 F.3d 600, 603 (5th Cir. 2006). Although it is the Court's *subject matter jurisdiction* and whether there is complete preemption under ERISA § 502(a) that is at issue here, as the Fifth Circuit explained in *Woods*, the question of whether complete preemption exists shares similarities with an inquiry into whether a claim relates to a an ERISA plan. After all, if a plaintiff's state law claims can be fairly characterized as a claim for benefits under the terms of an ERISA plan — the cause of action authorized by ERISA § 502(a)(1)(B) — such a claim would relate to the disputed plan.

The Fifth Circuit does not appear to have set forth a definitive test for evaluating whether a state law claim falls within the scope of the civil enforcement provisions in ERISA § 502(a). In the context of addressing the propriety of removal,

however, it has explained that in determining whether state law
claims "relate to" a plan, courts should ask

> (1) whether the state law claims address areas of exclusive
> federal concern, such as the right to receive benefits under
> the terms of an ERISA plan; and (2) whether the claims
> directly affect the relationship among the traditional
> entities—the employer, the plan and its fiduciaries, and the
> participants and beneficiaries.

*Id.* at 602. In *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004),
which involved a question of whether plaintiffs' state law claims
against their managed healthcare providers were completely
preempted under ERISA § 502(a), the Supreme Court explained that
if a plaintiff "could have brought his claim under ERISA §
502(a), and where there is no other independent legal duty that
is implicated by a defendant's action, then the individual's
cause of action is completely preempted by ERISA § 502(a)(1)(B)."
*Id.* at 210. The Seventh and Eleventh Circuits have developed
specific tests for determining whether complete preemption exists
that are similar to the criteria identified by the Fifth Circuit
in *Woods* that also provide helpful guidance. In *Butero v. Royal
Maccabees Life Ins. Co.*, 174 F.3d 1207 (11th Cir. 1999), the
Eleventh Circuit explained that ERISA § 502(a) completely
preempts a plaintiff's state law claim when the following four
elements are satisfied:

> First, there must be a relevant ERISA plan. Second, the
> plaintiff must have standing to sue under that plan. Third,

12

> the defendant must be an ERISA entity. Finally, the
> complaint must seek compensatory relief akin to that
> available under § [502(a)]; often, this will be a claim for
> benefits due under a plan.

*Id.* at 1212 (internal quotations and citations omitted). The
Seventh Circuit in *Jass v. Prudential Health Care Plan, Inc.*, 88
F.3d 1482 (7th Cir. 1996), identified the following three similar
factors "relevant for determining whether a claim is within the
scope of § 502(a):

> (1) whether the plaintiff [is] eligible to bring a claim
> under that section; (2) whether the plaintiff's cause of
> action falls within the scope of an ERISA provision that the
> plaintiff can enforce via § 502(a); and (3) whether
> plaintiff's state law claim cannot be resolved without an
> interpretation of the contract governed by federal law.

*Jass*, 88 F.3d at 1487 (internal quotations and citations omitted)
(alteration in original).

The Fifth Circuit has emphasized that whether the claims
involve conduct by ERISA entities is critical to the inquiry of
whether ERISA preemption exists. In *Perkins v. Time Ins. Co.*, 898
F.2d 470, 473 (5th Cir. 1990), the Fifth Circuit held that ERISA
did not preempt the plaintiff's state law claims for fraudulent
inducement and negligent misrepresentation against his
independent insurance agent, who had allegedly induced the
plaintiff to enroll in an ERISA group health insurance plan by
assuring him that the plan would provide certain coverage that in
fact it did not provide. *Id.* at 472. The *Perkins* court explained

13

that the plaintiff's claims "'relate[d] to [his ERISA] plan only indirectly" and because they did "not affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries) as such, [they were not] preempted by ERISA." *Id.* (citing *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1467 (5th Cir. 1986), *cert. denied*, 479 U.S. 1034 (1987)).

The Fifth Circuit reaffirmed its holding in *Perkins* in *Hobson v. Robinson*, 75 Fed. Appx. 949, 954 (5th Cir. 2003), in which it explained that the critical question in determining whether ERISA preempts a plaintiff's state law claim is "whether the claim itself created a relationship between the plaintiff and defendant that is so intertwined with an ERISA plan that it cannot be separated." The plaintiff in *Hobson* brought state law claims for fraud and negligent misrepresentation against his insurance agent who had induced him to switch his employee group health insurance plan but never actually procured the promised plan. The Fifth Circuit explained that the plaintiff's claims and the insurance agent's conduct "relate[d] only indirectly to the ERISA plan" and that the relationship between the plaintiff and the agent "derive[d] from state common-law claims, not the ERISA plan." *Id.* at 956. The Fifth Circuit further explained that finding ERISA did not preempt the plaintiff's claims, despite

14

their tangential connection to the ERISA plan, "does not contradict Congress's intent in enacting ERISA — the simplification of plan interpretation and administration — because Hobson's claims doe not require either plan interpretation or administration." *Id.*

The Fifth Circuit has applied this reasoning in several other cases. *See, e.g., Smith v. Texas Children's Hosp.*, 84 F.3d 152, 155 (5th Cir. 1996) (holding that ERISA did not preempt a state law claim for fraudulent inducement because it did "not necessarily depend upon the scope . . . of rights under [the] ERISA plan"); *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 944, 947 (5th Cir. 1995) (explaining that courts addressing ERISA preemption must inquire into whether the state law claim presents "questions [that] are intricately bound up with the interpretation and administration of the ERISA plan" and that preemption does not exist "when the claim merely affects relations between an ERISA entity and an outside party, rather than between two ERISA entities"); *Memorial Hospital System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 249 (5th Cir. 1990). Other circuit courts are in accord. *See, e.g., Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 990 (10th Cir. 1999) (holding insurance agent's misrepresentation of policy not preempted); Wilson *v. Zoellner*, 114 F.3d 713, 720-21

15

(8th Cir. 1997) (holding ERISA plan beneficiary's state law tort claim of negligent misrepresentation against insurance agent was too tenuous and remote to administration of plan to be preempted by ERISA); *Morstein v. Nat'l Ins. Servs., Inc.*, 93 F.3d 715, 723-24 (11th Cir. 1996) (explaining that ERISA preemption of claims against an independent agent would not promote congressional objectives because plan participants and beneficiaries would not be able to rely on agents' representations and therefor unable to make informed choices); *Delany Co. v. Selman*, 98 F.3d 1457, 1466-67 (4th Cir. 1996) (holding that misrepresentation claim against benefits management group was not preempted because complained of behavior did not relate to plan administration).

The Court also finds instructive the decision in *Giannetti v. Mahoney*, 218 F. Supp. 2d 8 (D. Mass. 2002), which involved facts that are highly analogous to those in this case. In *Gianetti*, the court remanded the plaintiffs' state law claims that his insurance agent failed to procure requested coverage because they were not completely preempted by ERISA § 502(a). The plaintiffs in *Gianetti* were a dentist and the dentist's wife and hygienist. The insurance agent procured a disability policy for the dentist to protect the income that he and his employees generated in case one of them became injured. The dentist and insurance agent discussed the need to peg the insurance policy to

the amount of income generated. The plaintiffs listed the
hygienist's annual earnings at $74,000, and the insurance agent
allegedly assured the plaintiffs that they had adequate coverage.
When the hygienist became injured, however, it became apparent
that she was insured only up to $26,000. Plaintiffs then brought
a host of state law claims against the insurance agent, similar
to the claims that Gulf Coast and Dr. Campbell bring here. The
court emphasized that "[w]hat Plaintiffs really challenge in this
action is not *the plan* itself . . . but the *procurement of the
plan* by an insurance agent and his agency." *Id.* at 12 (emphasis
in original). The court reasoned that because plaintiffs'
complaint did not "target the insurance company that underwrote
the ERISA plan . . . but, . . ., consists of run-of-the-mill
misrepresentation claims against the agent and agency who
allegedly procured the wrong plan," plaintiffs claims did not
relate to an ERISA plan. *Id.* at 13. Especially important to the
*Gianetti* court's ruling was that the plaintiffs did not bring
their claims against a traditional ERISA entity, as is the case
here. *Id.* at 14.

The Court finds that plaintiffs' claims against Hillyer do
not fall within the scope of ERISA § 502(a) because they do not
implicate a relationship governed by ERISA and because their
resolution does not require interpretation of an ERISA plan. The

17

gravamen of plaintiffs' claims against Hillyer is that Hillyer
failed to procure the increase in policy limits that plaintiffs
specifically requested and that he then misrepresented that the
increase had taken effect when in fact it had not. Plaintiffs'
claims against Hillyer do not concern whether Dr. Campbell's
disability is covered under the policy or whether Standard or
Hillyer improperly processed benefits or administered the plan.
According to plalintiffs' complaint, Dr. Campbell has received
benefits of $6,000 per month but not $10,000 because that
increase was never obtained. Plaintiffs' claims against Hillyer
concern whether Hillyer fulfilled their request for an increase
in policy limits and whether he misrepresented those limits.
Hillyer does not contend that he is a traditional ERISA entity
and concedes that he is not an ERISA fiduciary. Therefore,
Plaintiffs' claims do implicate a relationship governed by ERISA.
Similar to the plaintiffs in *Perkins* and *Hobson*, the plaintiffs
here have brought run-of-the-mill state law tort claims that are
only peripherally connected to an ERISA plan.

Hillyer's argument that this case can be distinguished from
*Perkins* and *Hobson* because plaintiffs were already participants
in an ERISA plan when they requested the policy limits increase
is without merit. Hillyer contends that plaintiffs' claims are
completely preempted by ERISA because they concern a request for

18

an increase in limits on an *existing* insurance policy as opposed
to claims for fraudulent inducement to participate in a *new* plan.
He argues that *Perkins* should be read narrowly to apply only to
claims for fraudulent inducement relating to an insurance agent's
solicitation of potential participants in an ERISA plan prior to
its formation. That is, it should apply only to situations in
which the alleged unlawful conduct occurred before the existence
of any plan, regardless of the defendant's responsibilities and
powers with respect to the plan.

Nothing in *Perkins* or in later cases interpreting *Perkins*,
however, suggests that such a cramped reading of *Perkins* is
appropriate. In holding that ERISA did not preempt the *Perkins*
plaintiff's state law claim for fraudulent inducement and that no
basis for federal jurisdiction over that claim existed, the Fifth
Circuit stated "[a] state law claim of *that genre*, which does not
affect the relations among the principal ERISA entities . . . *as
such*, is not preempted by ERISA." *Perkins*, 898 F.2d at 473
(emphasis added). The *Perkins* court made clear that the critical
inquiry is whether the claims implicate the relations of ERISA
entities to which the uniform regulatory scheme enacted by
Congress is intended to apply. Indeed, as the Fifth Circuit made
clear in *Perkins*, ERISA does not exist to "immunize [independent
insurance] agents from personal liability." *Id.* Further, in

19

*Hobson*, the Fifth Circuit explained that "the timing of plan formation is not the critical factor in ERISA preemption. Rather, the extent the claim itself relates to an ERISA plan guides our determination." *Hobson*, 75 Fed. Appx. at 954.

The  Eleventh Circuit has explained that, in determining whether ERISA preempts a state law claim, temporal facts about a plan's existence are less important than facts about the quality and nature of the defendant's role with respect to the plan at the time the allegedly tortious conduct took place. *See Cotton*, 402 F.3d at 1287. What is important is whether the defendant was "acting in [the role of an ERISA entity] when the alleged [conduct] too place." *Id.* In addition, courts interpreting *Perkins* have not adopted Hillyer's suggested reading. The key question is whether the state law claim "affects an aspect of the relationship that is comprehensively regulated by ERISA." *Bank of Louisiana v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 243 (5th Cir. 2006). *See also Hubbard*, 42 F.3d at 947 (explaining that *Perkins* held a state law claim "against a third party other than an ERISA entity is not preempted by ERISA if it does not implicate the plan's administration of benefits or 'affect the relations among the principal ERISA entities'").

Hillyer has not pointed to a single case in which the temporal fact about the date of an ERISA plan's existence was

20

dispositive of the issue of whether an independent insurance
agent occupied the role of a traditional ERISA entity. And the
cases on which he does rely are inapposite in this context. For
instance, in *Chidester v. Quoyeser*, No. 94-40536, 1994 WL 685015
(5th Cir. Nov. 23, 1994), a plan beneficiary brought state law
causes of action for misrepresentation and breach of contract
against her former employer and administrator of her health
insurance plan for terminating her health benefits and failing to
inform her that she could continue health coverage at her own
expense after being laid off. *Id.* at *2. The Fifth Circuit
rejected Chidester's argument that her claims were not preempted
because her injury occurred when she was not an employee and plan
participant and resulted from acts unrelated to the plan. In a
passage in *Chidester* that Hillyer quotes in his brief, the Fifth
Circuit expressly distinguished its holding in *Perkins*. The court
explained that its holding in *Perkins* "was based on our finding
that the fraud '[did] not affect the relations among the
principal ERISA entities," whereas the "alleged fraud against
Chidester *did involve the principal ERISA entities*:" the
plaintiff's employer, the plan fiduciaries, and the plaintiff as
a beneficiary *Id.* at *3 (emphasis added). Thus, the very
authority on which Hillyer relies actually undermines his
position because here plaintiffs' claims against him do not

derive from his conduct as a principal ERISA entity.

Nor is the Fifth Circuit's decision in *Reliable Home Health Care, Inc. v. Union Central Insurance Co.*, 295 F.3d 505 (5th Cir. 2002), on point in this case. In *Reliable*, the Fifth Circuit concluded that ERISA precluded the plaintiff's state-law fraud claims against its insurance agent. The *Reliable* plaintiff had contracted with his agent to *write* a pension plan and later learned that its agent had delayed in creating the plan until after the plaintiff had begun paying premiums. The agent in *Reliable* was not merely responsible for procuring a plan but for formulating it. Therefore, the agent's underlying conduct alleged by the *Reliable* plaintiff could not "be severed from its connection to the plan." *Id.* at 516.

The statements in *Weir v. Federal Asset Disposition Association*, 123 F.3d 281, 290 (5th Cir. 1997), and *Roig v. The Limited Long Term Disability Plan*, 2000 WL 1146522, at *6 (E.D. La. Aug. 4, 2000), that Hillyer quotes have no relevance in the context of this case. Those cases involved claims for benefits against ERISA entities tied to oral modifications and written amendments to the substantive terms of the plans. Determination of defendants' liability in those case necessarily turned on whether they had acted properly under the terms of the plans. In other words, their duties toward the plaintiffs derived from the

22

terms of the plans in question.

Here, there is no suggestion that Hillyer has *ever* acted as an ERISA entity or that he have ever had the responsibility or power to administer or make any decisions about the scope of coverage or benefits. In light of the Fifth Circuit's statements in *Perkins* and later cases, the Court finds no meaningful distinction between a claim for fraudulent inducement and a claim for failure to procure a requested increase in policy limits on an existing policy. Therefore, this lawsuit does not "affect . . . relations among the principal ERISA entities . . . as such," *Perkins*, 898 F.2d at 473, and is not completely preempted by § 502(a).

Hillyer's several arguments that resolution of plaintiffs' failure to procure and negligent misrepresentation claims would necessarily require the Court to interpret the disability plan and/or determine conclusively that Dr. Campbell would have been entitled to the full $10,000 in benefits but for his actions also fail. Hillyer has not established that Louisiana law requires an inquiry into the plan's terms. Louisiana courts have recognized for more than four decades that an insured-plaintiff may have a cause of action against insurance agents who fail to procure requested insurance:

An insurance agent who undertakes to procure insurance for

> another owes an obligation to his client to use reasonable
> diligence in attempting to place the insurance requested and
> to notify the client promptly if he has failed to obtain the
> requested insurance. The client may recover from the agent
> the loss he sustains as a result of the agent's failure to
> procure the desired coverage if the actions of the agent
> warranted an assumption by the client that he was properly
> insured in the amount of the desired coverage.

*Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So. 2d 728, 731

(La. 1973) (citing cases). Courts have since identified three

elements to a failure to procure claim. Citing *Karam*, the Fifth

Circuit has explained that a plaintiff must prove

> (1) an undertaking or agreement by the insurance agent to
> procure insurance; (2) failure of the agent to use
> reasonable diligence in attempting to place the insurance
> and failure to notify the client promptly if he has failed
> obtain the insurance; and (3) actions by the agent
> warranting the client's assumption that the client was
> properly insured.

*Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins.*

*Co.*, 910 F.2d 224, 229 (5th Cir. 1990). To establish a claim for

negligent misrepresentation, a plaintiff must show that

> (1) the defendant, in the course of its business or other
> matters in which it had a pecuniary interest, supplied false
> information, (2) the defendant had a legal duty to supply
> correct information to the plaintiff, (3) the defendant
> breached its duty, which can be breached by omission as well
> as by affirmative misrepresentation, and (4) the plaintiff
> suffered damages or pecuniary loss as a result of its
> justifiable reliance upon the omission or affirmative
> misrepresentation.

*Systems Engineering and Security, Inc. v. Science & Engineering*

*Ass'ns, Inc.*, 962 So. 2d 1089, 1092 (La. Ct. App. 2007).

24

Hillyer mistakenly relies on *Graham v. Milky Way Barge, Inc.*, 923 F.2d 1100 (5th Cir. 1991), for the proposition that inquiry into plaintiffs' disability plan is necessary. In *Graham*, the Fifth Circuit held that the plaintiff could not recover against his insurance agent on a failure to procure theory because there was no evidence from which it could be inferred that the plaintiff had requested a change to the existing policy that would have covered the plaintiff's conduct that triggered the underlying accident. *Id*. at 1106. In *Graham*, the plaintiff, a vessel owner, had an existing insurance policy that included two warranties, restricting coverage to operations under particular conditions. The record showed that the plaintiff had requested coverage that changed the terms of one warranty but not the other. Despite plaintiff's request, the agent failed to procure the requested coverage. Plaintiff's insurer denied coverage because the plaintiff had operated his boat in violation of both warranties under the existing policy. There was no dispute that had the plaintiff's agent procured the requested change, the plaintiff's conduct still would have been in violation of at least one of the warranties, thereby rendering the plaintiff ineligible to recover. The plaintiff was unable to recover on a failure to procure theory because he had never requested a change to the second warranty and therefore had no basis to assume that

his agent had procured coverage that would have insured against the conduct that resulted in the accident. Here, without passing on the merits of plaintiffs' claims or whether they could survive a peremption challenge under La. Rev. Stat. § 9:5606, it is undisputed for the purposes of this motion that plaintiffs asked Hillyer to procure disability insurance with a policy limit of $10,000, that Hillyer agreed to do so and represented to plaintiffs that he had in fact done so when he had not. Therefore, *Graham* does not apply in this context. Hillyer has not cited any other case in which a court applying Louisiana law has required a plaintiff who brought failure to procure and negligent misrepresentation claims against his independent insurance agent to show that an insurance provider would have provided particular coverage but for an agent's failure to procure. And the Court has found none.

Hillyer's argument that plaintiffs' request for damages is tied to their requested increase in policy limits and therefore necessitates interpretation of the plan is also unavailing. Hillyer relies on *Blum v. Spectrum Restaurant Group, Inc.*, Nos. 4:02-CV-92, 4:02-CV-98, 2003 WL 1889036 (E.D. Tex. Apr. 14, 2003), and *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290 (5th Cir. 1989), to argue that plaintiffs' claims necessarily involve the interpretation and administration of the ERISA plan. Because

26

plaintiffs seek damages of $4,000 per month dating back to Dr. Campbell's disability, which is the difference between the $6,000 policy limit in effect and the $10,000 limit requested, Hillyer contends that plaintiffs' claims necessarily relate to the ERISA plan. In *Blum*, the beneficiary of a life insurance plan sued her deceased husband's employer and the employer's broker that had procured and helped administer the plan, as well as the employer's insurance carriers, claiming that she was entitled to additional benefits under the policy. The employer had entered into an agreement with a broker in which the broker agreed to handle enrollment of employees in insurance plans and administration of the benefits, including communications regarding benefits. The plaintiff brought a host of claims under ERISA against the employer, the plan provider, and the broker as well as multiple state law claims for fraud, negligent misrepresentation, violation of the Texas Insurance Code and the Deceptive Trade Practices Act, breach of contract, and intentional infliction of emotional distress. The court concluded that plaintiff's state law claims were intricately related to plan and therefore preempted by ERISA because they dealt with "*the administration of the plan*." *Blum*, 2003 WL 1889036, at *5 (emphasis added).

In *Cefalu*, the defendant-employer terminated all of its

employees and ended their pension plans after it was bought out by a competitor. The plaintiff, a former employee of the defendant, had the option of working for the new owner and maintaining the same pension benefits that he enjoyed with his original employer or becoming an independent franchisor for the original employer with the assurance that he would receive the same benefits as before. The plaintiff opted to become a franchisor on the assurance that he would continue to receive the same level of benefits as he had before and if he had worked for the new owner. The Fifth Circuit observed that the plaintiff's claims related to the ERISA plan because to compute plaintiff's damages, the Court would have to "refer to the pension plan under which appellant was covered when he worked for" the defendant. *Cefalu*, 871 F.2d at 1294.

Both *Blum* and *Cefalu* are distinguishable from the facts presented here. Unlike the situation in *Blum*, plaintiffs' claims here do not amount to an allegation that *Hillyer* improperly *administered* the disability policy. Indeed, there is no suggestion that Hillyer had any authority to administer the plan or fulfilled any role that would make him a traditional ERISA entity. Hillyer also overlooks the Fifth Circuit's clarification in *Rozzell v. Security Services, Inc.*, 38 F.3d 819, 822 (5th Cir. 1994), that the broad statement in *Cefalu* about the effect of

28

calculating damages by referring to an ERISA plan was only dicta. The court explained that the statement in *Cefalu* "does not, and can not, mean that any lawsuit in which reference to a benefit plan is necessary to compute plaintiff's damages is preempted by ERISA and is removable to federal court." *Id.* In *Rozzell*, the plaintiff brought a claim for wrongful discharge against his former employer after he was allegedly fired for filing a worker's compensation claim. The employer argued that the plaintiff had implicated ERISA because he alleged that he had been deprived of the compensation and benefits of his job. The court rejected that argument, observing that the plaintiff's cause of action was governed exclusively by state law and did not claim that he was illegally denied benefits under state law. *Id.* at 822-23. Here, plaintiffs' claims against Hillyer are in a similar posture: they do not arise out of an alleged improper administration of the disability plan but rather from Hillyer's failure to procure the requested increase and his erroneous representation that the increase had taken effect.

Hillyer also overlooks *Smith v. Texas Children's Hospital*, 84 F.3d 152 (5th Cir. 1996). In *Smith*, the plaintiff brought a fraudulent-inducement claim against her new employer after she became permanently disabled and was unable to obtain benefits under her disability policy. The *Smith* plaintiff alleged that her

new employer had offered to transfer all of her existing
employment benefits but failed to do so. She sought benefits
under her new disability plan, or alternatively the accrued
benefits under the preexisting plan that she gave up when she
switched jobs. The Fifth Circuit observed that a difficulty arose
in determining whether ERISA preempted the plaintiff's
fraudulent-inducement claim because "the measure of her injury
[was] the same regardless of whether she pursues recovery of
benefits relinquished or benefits denied." *Smith*, 84 F.3d at 155.
In other words, because of the nature of the assurance made by
the plaintiff's new employer, "the value of the benefits that she
gave up by leaving [her old employer] is equal to the value of
any benefits that she could claim under [her new employer's]
ERISA plan." *Id.* The court concluded that ERISA did not preempt
the plaintiff's fraudulent-inducement claim because she lost "a
quantifiable stream of income that she would now be receiving
had" she never left her old employer. *Id.* Her new employer's
liability turned "not on the quantum of benefits available" under
its ERISA plan but on whether it "misled Smith when it told her
that she would keep what she had." *Id.* at 155-56. The *Smith* court
explicitly distinguished *Cefalu*, explaining that the plaintiff's
breach of contract claim was inextricably bound to the ERISA plan
with his original employer because his right to benefits under

that plan ceased the moment he was terminated and because he
sought "recovery of retirement benefits that [his original
employer] allegedly owed him as a *continuation* of its ERISA
plan." *Id.* at 156.

The Fifth Circuit's statements in *Memorial Hospital System
v. Northbrook Life Insurance, Co.*, 904 F. 2d 236 (5th Cir. 1990),
are instructive on whether plaintiffs' damages claim falls within
the civil enforcement provisions of ERISA § 502(a). Hillyer
essentially argues that plaintiffs, by pegging their claimed
damages to the $4,000 difference, are seeking to recover benefits
under the disability plan. The Fifth Circuit has described
arguments such as Hillyer's as "present[ing] a closer question on
the preemption issue" but ultimately failing to establish that
plaintiffs' claims fall within the scope of a claim for benefits
under the terms of an ERISA plan under ERISA § 502(a)(1)(B). *Id.*
at 247. Plaintiffs' use of the difference in policy limits as a
measure of damages is "unrelated to the [their] *actual right* to
benefits under the plan," because recovery against Hillyer "would
not affect the on-going administration or obligations of an ERISA
plan" as would a claim for benefits brought against Standard. *Id.*
(emphasis added). The difference in coverage functions as a
"benchmark" for the calculation of damages and prevents "a court
from speculating on the proper amount of damages." *Id.* It does

31

not affect the administration of an ERISA plan because Hillyer,
as an independent agent, is not responsible for plan
administration and his actions cannot be imputed to Standard. *See*
*Hobson*, 75 Fed. Appx. at 955 (explaining that an insurer, as a
provider of an ERISA policy, cannot be held responsible for an
independent agent's conduct because of the agent's independent
status).

Plaintiffs' claims do not require the interpretation or
administration of an ERISA plan and they do not implicate a
relationship between ERISA entities. They arise from the alleged
acts and omissions of an independent insurance agent whose duties
toward plaintiffs are governed entirely by state law and do not
require the interpretation of plaintiffs' disability policy.
Hillyer has not cited a single case in which a court has
concluded that ERISA § 502(a) completely preempts claims against
an independent insurance agent similar to those that plaintiffs
bring here. As discussed, *supra*, the cases in which courts have
found complete preemption have involved claims brought against
ERISA entities that require interpretation of ERISA plans.
Becuase plaintiffs' claims against Hillyer do not implicate ERISA
they do not raise a federal question. Therefore, the Court has no
basis to exercise jurisdiction over this case and must remand it
to state court.

**III. CONCLUSION**

    For the foregoing reasons, the Court GRANTS plaintiffs'

motion to remand.


    New Orleans, Louisiana, this <u>3rd</u> day of June 2008.

                  *Sarah Vance*
         _____
                SARAH S. VANCE
         UNITED STATES DISTRICT JUDGE